UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| SEDRICK L. HADLEY, ) | |
| ) | |
| Plaintiff, ) | Case No. CV 12-3558-AJW |
| ) | |
| v. ) | MEMORANDUM OF DECISION |
| ) | |
| CAROLYN W. COLVIN[1], ) | |
| Acting Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |
| ) | |

Plaintiff filed this action seeking reversal of the decision of defendant, the Acting Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's applications for disability insurance benefits and Supplemental Security Income benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to the disputed issue(s).

**Administrative Proceedings**

On June 26, 2007, plaintiff, aged 43, filed his applications for benefits alleging that he had been disabled since May 30, 2007. [JS 2; Administrative Record ("AR") 81-86]. In a written hearing decision that constitutes the Commissioner's final decision in this matter, an administrative law judge (the "ALJ") found that plaintiff had severe impairments consisting of chronic lumbrosacral musculoligamentous

---

[1] Carolyn W. Colvin is substituted for her predecessor in office, Michael J. Astrue. See Fed. R. Civ. P. 25(d).

strain/sprain, likely associated with degenerative disc disease; left knee patellofemoral chondromalacia; carpal tunnel syndrome of the left hand; and bipolar disorder, not otherwise specified. [AR 22]. The ALJ determined that plaintiff retained the residual functional capacity ("RFC") to perform a reduced range of sedentary work. [AR 23]. Based on the testimony of a vocational expert, the ALJ found that plaintiff's RFC precluded him from performing his past relevant work, but that he could perform jobs that exist in significant numbers in the national and regional economy, such as bench assembler and production inspector. [AR 27-28]. Therefore, the ALJ found plaintiff not disabled at any time through the date of his decision. [AR 28].

## Standard of Review

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or is based on legal error. Stout v. Comm'r, Social Sec.Admin., 454 F.3d 1050, 1054 (9th Cir. 2006); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (internal quotation marks omitted). The court is required to review the record as a whole and to consider evidence detracting from the decision as well as evidence supporting the decision. Robbins v. Soc. Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006); Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Comm'r of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)).

## Discussion

**Credibility finding**

Plaintiff's sole contention is that the ALJ improperly assessed plaintiff's subjective symptom testimony. [JS 5-15, 19].

Once a disability claimant produces evidence of an underlying physical or mental impairment that is reasonably likely to be the source of the claimant's subjective symptoms, the adjudicator is required to consider all subjective testimony as to the severity of the symptoms. Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir.1991) (en banc); see also 20 C.F.R. §§

404.1529(a), 416.929(a) (explaining how pain and other symptoms are evaluated). Although the ALJ may then disregard the subjective testimony she considers not credible, she must provide specific, convincing reasons for doing so. Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001); see also Moisa, 367 F.3d at 885 (stating that in the absence of evidence of malingering, an ALJ may not dismiss the claimant's subjective testimony without providing "clear and convincing reasons"). The ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa, 367 F.3d at 885. If the ALJ's assessment of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the court's role to "second-guess" it. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

In evaluating subjective symptom testimony, the ALJ must consider "all of the evidence presented," including the following factors: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of pain and other symptoms; (3) precipitating and aggravating factors, such as movement, activity, and environmental conditions; (4) the type, dosage, effectiveness and adverse side effects of any pain medication; (5) treatment, other than medication, for relief of pain or other symptoms; (6) any other measures used by the claimant to relieve pain or other symptoms; and (7) other factors concerning the claimant's functional restrictions due to such symptoms. See 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); see also Social Security Ruling 96–7p, 1996 WL 374186, at *3 (clarifying the Commissioner's policy regarding the evaluation of pain and other symptoms). The ALJ also may employ "ordinary techniques of credibility evaluation," considering such factors as (8) the claimant's reputation for truthfulness; (9) inconsistencies within the claimant's testimony, or between the claimant's testimony and the claimant's conduct; (10) a lack of candor by the claimant regarding matters other than the claimant's subjective symptoms; (11) the claimant's work record; and (12) information from physicians, relatives, or friends concerning the nature, severity, and effect of the claimant's symptoms. See Light v. Social Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997); Fair v. Bowen, 885 F.2d 597, 604 n.5 (9th Cir. 1989).

The ALJ must provide specific, clear and convincing reasons for discrediting a claimant's

1  complaints *unless* there is affirmative evidence that the claimant is malingering.[2] Robbins, 466 F.3d at 883.
2  "[T]he mere existence of 'affirmative evidence suggesting malingering' vitiates the clear and convincing
3  standard of review." Schow v. Astrue, 272 Fed. Appx. 647, 651 (9th Cir. 2008) (quoting Robbins, 466 F.3d
4  at 883); see Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1160 n.1 (9th Cir. 2008) (noting that
5  the statement in Robbins "suggesting that the ALJ must make a specific *finding* of malingering before the
6  clear-and-convincing-reasons standard applies is an anomaly in this Circuit's caselaw") (emphasis in
7  original); Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003) (stating that once the claimant produced
8  objective medical evidence showing the existence of a medically determinable impairment that could
9  reasonably be expected to produce "some degree of the alleged symptoms," the ALJ could reject her
10 subjective testimony "only upon (1) finding evidence of malingering, *or* (2) expressing clear and convincing
11 reasons for doing so") (emphasis added); Longmore v. Astrue 783 F. Supp. 2d 1130, 1134 (D. Or. 2011)
12 (stating that "a finding of suggested malingering is proper for consideration," provided that the ALJ
13 "consider[s] the entire case record in determining a claimant's credibility"); Richardson v. Astrue, 2011 WL
14 3273255, at * 7 (W.D. Wash. July 28, 2011) (noting that "no actual diagnosis of malingering is required for
15 the ALJ or the Court to find affirmative evidence thereof," and that "the important point is that there must
16 be *affirmative evidence* of malingering") (emphasis in original) (citing Carmickle, 533 F.3d at 1160 n.1).

    As the ALJ noted, the record contains affirmative evidence that plaintiff was malingering by
exaggerating his subjective symptoms and limitations. For example, plaintiff underwent a consultative
orthopedic examination on January 22, 2006 with Juliane Tran, M.D. [AR 24, 158-161]. Dr. Tran noted
that plaintiff said that he had a history of neck, back, and hand pain since 1999, and that he rated his pain
as 10 on a 1-to-10 scale. [AR 24, 158]. Plaintiff engaged in a severe pain behavior in response to even light
palpation to his spine and light tapping on his upper arm. [AR 24, 159]. Dr. Tran could not complete motor

---

[2] Malingering is defined as the "intentional production of false or grossly exaggerated physical or psychological symptoms, motivated by external incentives such as avoiding military duty, avoiding work, obtaining financial compensation, evading criminal prosecution, or obtaining drugs." United States v. Wilbourn, 336 F.3d 558, 559 (7th Cir. 2003) (citing American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 739 (rev. 4th ed. 2000)).

1  testing in the left upper extremity due to plaintiff's "giving minimal to submaximal effort. Strength is
2  estimated to be 2/5 due to decreased effort. The claimant does not give adequate resistance even for
3  testing." [AR 24 (citing AR 160)]. Dr. Tran's impression was back and neck pain, "probably sprain/strain.
4  The claimant does not give maximum effort during the examination." [AR 24, 159]. Dr. Tran noted that
5  plaintiff had a "non-specific complaint in the right thumb" without significant evidence of joint deformity
6  or swelling, and that "examination was noted for the claimant exhibiting severe pain and painful behavior
7  throughout the examination of any part of the right arm, right hand, right thumb, or right wrist." See
8  Thomas, 278 F.3d at 959 (concluding that the ALJ properly considered that claimant "failed to give
9  maximum or consistent effort" during a consultative evaluation when evaluating the claimant's credibility);
10  Tonapetyan, 242 F.3d at 1148 (citing the claimant's "lack of cooperation during consultative examinations"
11  as substantial evidence to support the ALJ's credibility finding).

12  Additionally, plaintiff underwent a psychiatric evaluation with Gabrielle Paladino, M.D. in October
13  2007. [AR 25, 186-92]. Dr. Paladino took a detailed history and conducted a mental status examination.
14  Plaintiff said that his father was "extremely violent to all family members," including plaintiff, until
15  plaintiff's mother left his father when plaintiff was two. Plaintiff described problems learning and paying
16  attention in school until he dropped out in the eleventh grade. He "admit[ted] to an early onset of criminal
17  behavior" during his childhood, including setting fire to his mother's bed, lying, stealing, deliberately killing
18  a cat, and running away from home. [AR 187]. Plaintiff also had an "extensive criminal history," including
19  serving ten years in prison for rape, and violating his parole twice. [AR 187-188]. He had been admitted
20  to a prison psychiatric ward for three months in 1992 (long before his alleged onset date) after a suicide
21  attempt that plaintiff said was triggered in part by the prospect of a long prison term, but he had not been
22  psychiatrically hospitalized outside of prison. [AR 187-188]. Plaintiff said that he had undergone treatment
23  and received psychiatric medication from a county clinic between 2005 and 2006, but had discontinued
24  treatment there a year and a half earlier due to lack of transportation. [AR 187]. Noting that plaintiff
25  admitted a long-term history of daily alcohol and marijuana use, and that his breath and skin smelled
26  "overwhelming[ly]" of alcohol during the examination, Dr. Paladino diagnosed alcohol abuse and
27  dependence, continuous; cannabis abuse and dependence, continuous; and antisocial personality disorder.
28  [AR 25, 191]. She added that plaintiff "would definitely meet the diagnostic criteria for antisocial

personality disorder. Such individuals have very criminalized minds and are highly manipulative. Therefore, malingering would have to be an important consideration when evaluating such a person for the possibility of disability benefits. [AR 25, 191].

In addition to citing this affirmative evidence of malingering, the ALJ noted that plaintiff provided inconsistent and conflicting information regarding his physical impairments during a May 2010 consultative orthopedic evaluation performed by Dale Van Kirk, M.D. [AR 26, 239-243]. Dr. Van Kirk concluded that plaintiff "was a very poor historian" whose "history changed several times during examination, particularly as to the problem with his left leg." [AR 26 (citing AR 239)]. See Thomas, 278 F.3d at 959 (holding that the ALJ's finding that the claimant "had not been a reliable historian" supported the ALJ's credibility assessment).

The ALJ articulated other reasons that are supported by substantial evidence for finding plaintiff not fully credible. Citing the consultative examiners' generally mild objective findings and the dearth of treating source evidence, the ALJ reasonably concluded that the objective medical evidence did not fully corroborate plaintiff's subjective complaints. [AR 24-26]. See Burch, 400 F.3d at 681 ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."). The ALJ also pointed out that the record contained minimal evidence of treatment for plaintiff's allegedly disabling physical and mental symptoms, as well as evidence that plaintiff failed to comply with treatment when it was prescribed. [AR 24-25]. During his October 2007 psychiatric consultative examination with Dr. Paladino, for example, plaintiff admitted that he "had a longstanding history of noncompliance with medications," and that he only took his medication when he thought about it. [AR 24 (citing AR 187)]. Additionally, in response to written questions propounded by the Commissioner, plaintiff stated that he had not complied with his physicians' advice to stop using drugs and alcohol and to use prescribed medication instead. [AR 24 (citing AR 133-140)]. These were permissible reasons for discrediting plaintiff's subjective testimony. See Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (stating that an ALJ may properly rely on "unexplained or inadequately explained failure to seek treatment or to follow a course of treatment" in assessing credibility); Burch, 400 F.3d at 681 (observing that where the claimant's pain was "not severe enough to motivate her to seek" consistent treatment, the absence of such treatment "is powerful evidence regarding the extent to which she was in

1 pain"); Fair, 885 at 604 (finding that the claimant's allegations of persistent, severe pain and discomfort
2 were belied by "minimal conservative treatment" and the claimant's failure to follow medical advice).
3       There is affirmative evidence of malingering in the record that is sufficient to "vitiate[]the clear and
4 convincing standard of review," Schow, 272 Fed. Appx. at 651, and to justify the ALJ's negative credibility
5 finding, but even if the clear and convincing standard applies, the ALJ articulated specific, clear, and
6 convincing reasons supported by substantial evidence in the record for rejecting the alleged severity of
7 plaintiff's subjective complaints.

**Conclusion**

9       For the reasons stated above, the Commissioner's decision is supported by substantial evidence and
10 is free of legal error. Therefore, the Commissioner's decision is **affirmed**.
11 **IT IS SO ORDERED.**

13 August 14, 2013

15       ANDREW J. WISTRICH
      United States Magistrate Judge